UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DOVA WINEGEART,<br><br>Defendant. | Criminal No.  22-cr-301 (CJN) |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNT ONE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Opposition to Defendant Dova Winegeart's Motion to Dismiss Count One of the Indictment, ECF No. 46 ("Motion" or "Def. Mot.").

**I.      Factual Background**

This case arises from the January 6, 2021 riot at the United States Capitol.  On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large mob gathered outside the United States Capitol, entered the restricted grounds, and breached the Capitol building.  As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement could clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The defendant traveled from Oklahoma to Washington, D.C., and joined the riot at the Capitol on January 6, 2021.  By at least 3:06 p.m., defendant Winegeart and her husband, Terry Winegeart, approached the Capitol building from the southeast side and entered restricted Capitol grounds.  The defendant immediately darted towards the House of Representatives Door – the door

1

on the south wing of the Capitol building with an east front entrance, as indicated below in the yellow box.



At the time, rioters were amassing outside the door and attempting to gain entry into the building. By 3:08 p.m., the defendant made it to the top of the stairs, with Terry Winegeart trailing behind.



*Defendant Winegeart (red circle) approaching the House of Representatives door and Terry Winegeart (yellow circle) trailing behind*

The defendant immediately worked her way through the crowd and approached the door at 3:08 p.m.



After standing at the door, the defendant turned and waved to others.



The defendant then either picked up or was handed a long wooden pole with a metal eye bolt on its tip.



The defendant appeared to yank and pull at the door as she was visibly agitated. After shaking her head, the defendant turned to the crowd, lifted the pole in the air, and appeared to yell to the crowd.



From there, the defendant turned back towards the door, lifted the wooden pole, and forcefully swung the pole at the windowpane.

4



After striking the windowpane twice, the large wooden pole shattered in half. Terry Winegeart approached the defendant, grabbed both pieces of the broken pole from the defendant's hands and threw them on the ground, and tried to pull the defendant away from the door.







The defendant initially shrugged him off, raised her finger in the air towards the crowd, and appeared to say something. Terry Winegeart then successfully removed the defendant from the area.

From there, the defendant remained on Capitol grounds—near bike rack barricades and police officers—for over an hour. The defendant approached police officers standing behind bike racks and said, among other things, that she "came here" because she "wanted to storm the Capitol."

Following January 6, the defendant commented publicly and in private conversations about her intent and purpose for being at the Capitol. She said, for example, that she will "keep fighting" and that "we want[ed] to go inside Capital [sic]." When asked, on January 7, about her participation and whether she was safe, the defendant said, for example, "Had to stay in hotel after storm of capital [sid]. It got crazy. I did shit."

After January 6, 2021, the Architect of the Capitol facilitated the replacement of the damaged glass in the House of Representatives Door windowpane. The cost to replace the damaged glass exceeded $1,000.

II.     **Procedural Background**

On September 9, 2022, the grand jury indicted the defendant on five counts: a felony violation of 18 U.S.C. § 1361 for Attempted Destruction of Government Property (Count One), and four misdemeanor violations for violations of 18 U.S.C. §§ 1752(a)(1), (2), and (4) and 40 U.S.C.

6

§ 5104(e)(2)(F). ECF No. 12.

This Court originally set a scheduling order in October of 2023 that required all pretrial motions to be filed on or before February 5, 2024. ECF No. 30. Current defense counsel appeared January 23, 2023, ECF No. 31, and the parties jointly moved this Court to extend the pretrial motion deadline by one week, asserting good cause based on that recent appearance, *see* ECF 35. At a status conference on February 9, 2024, this Court vacated the previously entered scheduling order and ordered a proposed revised pretrial schedule by February 16, 2024. Minute Entry (2/9/24). The parties filed a joint proposed pretrial schedule on February 16, ECF No. 37, which proposed a pretrial motions deadline (including challenges to the indictment) of March 8, 2024. The parties proposed a second joint proposed pretrial schedule on April 7, 2024, ECF No. 38, that proposed a pretrial motions deadline (including challenges to the indictment) of May 8, 2024. The Court ordered that "[t]he Parties shall file any pretrial motions (including motions to dismiss the indictment, motions to exclude evidence, and motions *in limine*) on or before May 3, 2024." ECF No. 40. The Government and the defendant entered three filings, all relating to motions *in limine*, on May 3, 2024.

On May 8, 2024, the defendant moved this Court to dismiss Count One of the Indictment. ECF No. 46.

### III. Legal Standards

#### A. Pretrial Motions and Timing Under Fed. R. Crim. P. 12(c)(3)

"A motion challenging 'a defect in the indictment or information' '*must* be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits.'" *United States v. Griffith*, No. 21-244-2 (CKK), 2023 U.S. Dist. LEXIS 79302 at *4 (D.D.C. May 5, 2023) (quoting Fed. R. Crim. P. 12(b)(3)(B)). "A Court may

only consider an untimely challenge to a defective indictment upon good cause shown." *Griffith*, 2023 U.S. Dist. LEXIS 79302 at *4 (citing Fed. R. Crim. P. 12(c)(3)).

Generally, a party can demonstrate "good cause" only if they can show some reason why they could not have challenged the defect in the time required by Rule 12. *See, e.g.*, *United States v. Doost*, 3 F.4th 432, 437 (D.C. Cir. 2021) (ineffective assistance of counsel). "A tactical decision to delay investigating an argument does not suffice." *Griffith*, 2023 U.S. Dist. LEXIS 79302 at *4 (citing, *e.g.*, *United States v. Lorenzana-Cordon*, Crim. A. No. 03-311-13, 14 (CKK), 2017 U.S. Dist. LEXIS 233138 at *37 (D.D.C. June 2, 2017). Nor can any delay be excused where the defect is apparent from the face of the charging instrument. *See United States v. Weathers*, 186 F.3d 948, 954, 337 U.S. App. D.C. 362 (D.C. Cir. 1999). And where a defendant makes "no effort to show any reason, let alone good cause, for [a] belated [motion,]" the motion may be "rejected" "[f]or [that] reason alone." *United States v. Bikundi*, No. 14-030 (BAH), 2016 U.S. Dist. LEXIS 28512, at *171 (D.D.C. Mar. 7, 2016) (citations omitted).

Courts in this District have held that the delayed challenge to a defect of which defense counsel was on notice is precisely the sort of dilatory conduct against which Rule 12(c) guards. *Griffith*, 2023 U.S. Dist. LEXIS 79302 at *5. As *Weathers* explains,

> [i]f [a] defendant[] were allowed to flout [Rule 12's] time limitations, . . . there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in the hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when prosecution might well be difficult.

186 F.3d at 953.

### B. Motions to Dismiss

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," such as the "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). But a

8

dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use[] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury.'" *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)). For an indictment to sufficiently state an offense, it need only "inform the defendant of the nature of the accusation against him," *Ballestas*, at 148-49 (quoting *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001)), or, in other words, it must inform the defendant of "the precise offense of which he is accused so that he may prepare his defense," *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014).

Under the Federal Rules of Criminal Procedure, an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "When considering a motion to dismiss an indictment, a court assumes the truth of [the government's] factual allegations." *Ballestas*, 795 F.3d at 149 (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

### C. Collateral Estoppel

The common law doctrine of collateral estoppel is a form of issue preclusion that ensures that "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 5 (D.D.C. 2011) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

For collateral estoppel to apply: "(1), the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2), the issue must have been actually and necessarily determined by a court of competent jurisdiction in that

prior case; and (3), preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dept. of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007).; *see also United States v. Hoover-Hankerson*, 511 F.3d 164, 171 (2007).  Without any of the three elements, collateral estoppel does not apply.

At times, a form of collateral estoppel, in which "one party is barred from relitigating an issue decided in a previous proceeding, where the parties were not the same in the prior proceeding," may be found to apply. *United States v. Ustica*, 847 F.2d 42, 49 n.14 (2d Cir. 1988).  This is known as the "doctrine of nonmutual collateral estoppel." *Id*.

The Government has long been recognized as exempt from application of doctrines of collateral estoppel in ways that private parties would otherwise be subject to, particularly in a criminal context.  *See, e.g.*, *United States v. Certified Envtl. Servs.*, 753 F.3d 72, 100 (2d Cir. 2014) ("[T]he Supreme Court has held that nonmutual collateral estoppel is generally unavailable against the Government and has long rejected application of nonmutual collateral estoppel against the Government in criminal trials.") (citing *United States v. Mendoza*, 464 U.S. 154, 159-64 (1984) and *Standefer v. United States*, 447 U.S. 10, 21-25 (1980)).  To the contrary, it is generally recognized that principles of collateral estoppel, and especially "nonmutual collateral estoppel[,] do not prohibit the Government from relitigating a factual issue in one criminal [proceeding] that has been decided in a prior [proceeding] of another defendant." *United States v. Certified Envtl. Servs.*, 753 F.3d at 100; *see also Mendoza*, 464 U.S. at 162 ("[N]onmutual offensive collateral estoppel simply does not apply against the Government in such a way as to preclude relitigation of issues . . . .").

This nonapplication is further reinforced in criminal contexts where the "important federal interest in the enforcement of the criminal law" serves to "outweigh the economy concerns that undergird the estoppel doctrine." *Standefer v. United States*, 447 U.S. at 25;  *see also id*. at 22-23

(discussing other considerations differentiating criminal contexts from civil contexts).

IV. **Argument**

    A. **The Motion is Untimely and Lacks Good Cause And Thus Should Be Denied**

The defendant's motion to dismiss was filed out of time and thus should be dismissed.

First, the Court set a deadline for all "pretrial motions (including motions to dismiss the indictment, . . . ) on or before May 3, 2024." ECF No. 40. This order was entered almost a month before the motions deadline, and the revised deadline was almost three months after the original deadline of February 5, 2024, ECF No. 30, and two months after the original jointly proposed deadline of March 8, *see* ECF No. 37. The motion was filed late; accordingly, it is untimely, *see* Federal Rule of Criminal Procedure 12(c)(3), and may not be considered.

Second, only where a party "shows good cause" "may the Court consider the defense, objection or request[.]" *Id*. The defendant does not show, let alone attempt to show, "good cause." And doing so in a reply filing would be too late. *See United States v. Van Smith*, 530 F.3d 967, 973 (D.C. Cir. 2008) (quoting *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring) ("A reply brief is for replying, not for raising a new ground . . . .")). Notably, here, the defendant filed other motions on time showing that this was not a case of mistake or misapprehension. *See* ECF Nos. 42, 43. Because the motion is untimely and no good cause exists to extend the deadline to file such a motion, the Court should deny the motion.

    B. **The Defense's Motion Does Not Raise A Legal Ground To Dismiss This Case**

Beyond being untimely, the motion is also procedurally improper. The defendant presents facts intended to undermine the charge as indicted by the grand jury. This is not only an impermissible use of Rule 12, but the remedy that the defendant requests (dismissal) doesn't make sense on the facts of the case.

11

The defendant presents a pictorial exemplification of the defense case regarding what damage the defendant caused to the exterior door. *See* ECF No. 46 at 4-11. But this does not raise "a defect in the indictment," and the defendant does not allege failure to state an offense or a lack of specificity. *See* Fed. R. Crim. P. 12(b)(3)(B). If anything, the facts raised in the defendant's motion amount to a factual disagreement about the defendant's actions or intent, both of which are issues preserved for the finder of fact at trial. But such arguments have no place at this posture of this criminal case. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context."); *United States v. Oseguera Gonzalez*, 2020 U.S. Dist. LEXIS 201479, at *5 (D.D.C. 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence).

The defense asserts that the Government is incapable of proving the defendant's actions caused damage to the windowpane on the door. This theory of defense runs counter to the plain language of the statute. Section 1361 makes it a crime for anyone to "willfully injure or commit[] any depredation" against any property of the United States or attempt to commit such depredation. 18 U.S.C. § 1361. The statute makes the crime a felony "if the damage or attempted damage" exceeds $1,000. *Id.* (emphasis added). The statute thus criminalizes the "willful" act or attempt to injure or commit depredation to federal property. The criminality of the act does not turn on "actual loss" amount, but rather the damage attributable to the willful act of injury or depredation. *See United States v. Bowe*, 360 F.2d 1, 8 (2d Cir. 1966) (A plan to "blow off the head and arm of the Statue of Liberty . . . contemplated damages in excess of" the felony amount).

Here, the evidence will show that the defendant willfully injured or committed depredation

to the windowpane or, at a minimum, attempted to. The defendant used a long wooden pole with a metal eye bolt on its tip and struck the windowpane multiple times with sufficient force to break the wooden pole into two pieces. The evidence will show that the defendant's intent was to enter the Capitol building, and that the damage or attempted damage to the windowpane exceeded $1,000. That someone else may have caused damage to the windowpane prior to the defendant's act of depredation does not negate the defendant's willfulness. Thus, the defendant's request to dismiss the count is meritless.

    C.    **Collateral Estoppel Does Not Apply**

Beyond the procedural impropriety of the motion, the defense's contention that collateral estoppel should apply here is wrong on the merits. Citing no authority, Def. Mot. at 12, the defense argues that, because another rioter was charged with Destruction of Government Property for his actions with regard to the same House of Representatives' door windowpane, the government improperly charged the defendant here. From there, the defense argues that the Government should be collaterally estopped from pursing Count One against the defendant. Def. Mot. at 11-12 (referring to *United States v. Gregory Nix* (D.D.C. No. 21-cr-00678 (BAH)) as the case where the Government charged defendant Nix with Destruction of Government property for his actions against the House of Representatives' door windowpane).

Simply put, collateral estoppel does not apply, and the defense's argument demonstrates a misunderstanding of the charged statute (Section 1361) and the common law doctrine of collateral estoppel. As an initial matter this issue was never litigated in *Nix* and there is no judgment in *Nix* related to the issue of damage to the windowpane.

First, the defendant asserts that "[t]he Government has taken the factual position in a prior prosecution that another defendant acted before and independent of Ms. Winegeart to damage the

same property in an amount greater than $1,000 based on the same replacement cost." Def. Mot. at 3, citing the *Nix* complaint affidavit (21-cr-678, ECF No. 1-1) and Count Three of the *Nix* indictment (21-cr-678, ECF No. 6). But the *Nix* case was resolved by plea agreement and the defendant pleaded guilty solely to Count Two, Assaulting, Resisting, Or Impeding Certain Officers Using A Dangerous Weapon And Inflicting Bodily Injury. *See* 21-cr-678, ECF No. 38; *see also* ECF No. 57 (judgment showing Count Three, alleging a violation of Section 1361, dismissed).

For collateral estoppel to apply: "(1), the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2), the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3), preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin*, 488 F.3d at 454. Here, none of the elements of collateral estoppel apply: the issue was not submitted for judicial determination, the issue was not actually and necessarily determined by a court of competent jurisdiction in the prior case, and estopping the Government would work a basic unfairness to the Government's important federal interest in enforcing federal criminal law. Therefore, the defense motion should be denied on that basis.[1]

---

[1] To the extent that the defendant's assertions relating to "inconsistent positions" reflect an attempt to raise an issue of judicial estoppel (which, to be clear, is *not* presently raised (or even mentioned) in the defense motion), judicial estoppel is equally inapplicable here. While no test has been definitely adopted by the D.C. Circuit, it has still identified the following factors from the Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) that bear on its application:
> (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

*United States v. Flores*, 912 F.3d 613, 618-19 (D.C. Cir. 2019). Here, the Government's charge is not "clearly inconsistent" with its earlier prosecution: both defendant Nix and the defendant attacked the door and caused (or attempted to cause) damage and the Architect of the Capitol has estimated the damage done to the door will cost in excess of $1,000 to repair. And, regardless, the charge in *Nix* was not "accepted" by the Court in *Nix*. To the contrary, that charge was dismissed and forms

Second, even if the defendant's motion were timely, and even if collateral estoppel applied (neither of which are accurate), the defendant's motion should still be denied on three alternative bases.

First, Count One covers the defendant's clear actions of *attempting* to cause damage to the House of Representatives' door windowpane. The defendant does not advance or otherwise address the clear attempt to break through or otherwise force entry through the door made by the defendant, success of which would have resulted in even greater damage to the door than was actually done. And, on that basis alone, Count One necessarily survives irrespective of the correctness of the defendant's contentions in its motion.

Second, Count One can proceed on an aiding and abetting theory. Such a theory has previously been advanced in the 18 U.S.C. § 1361 context. *See, e.g.*, *United States v. Tijerina*, 446 F.2d 675, 677 (10th Cir. 1971) (holding that evidence proving defendant engaged in "more than mere presence and knowledge that the offenses were being committed" is sufficient to sustain a conviction of aiding and abetting in the § 1361 context). A defendant aids and abets the commission of a crime where the defendant willfully associate herself with the venture and willfully participates in it as something she wishes to bring about and that she willfully seeks by some act of hers to make it succeed. *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949). Here, the defendant did just that: taking the defendant at her assertions, she (1) saw a door obviously damaged earlier in the violent

---

no part of the plea agreement, statement of offense, or final judgment. Finally, the defendant has not identified any "unfair advantage" or other "detriment" that the Government would gain or the defendant would suffer from any alleged inconsistency.

Finally, even if each of those factors were met by the circumstances here, the Government is, again, different from private actors, especially in executing sovereign functions like federal law enforcement. "[B]roadly [speaking], 'there is no clear consensus in the federal courts on whether a prosecutor may be precluded from raising an argument at a criminal trial because the government has asserted a factually incompatible argument in pursuing a conviction against another defendant at another trial.'" *United States v. Wilkerson*, 656 F. Supp. 2d 22, 34 (D.D.C. 2009). Judicial estoppel does not apply to this case or in this context.

riot (not yet broken through), (2) decided to join in, continue, or add to the damage and attempt to break in and willfully participated in the door's further injury (3) through her attack on the door, which she undertook to help make the break in successful. Accordingly, she aided and abetted prior rioters in their criminal actions violating 18 U.S.C. § 1361. From there, Count One may be sustained on that basis.

Finally, the defendant's damage (or attempted damage) to the windowpane is not "separate" from the damage allegedly caused by defendant Nix; rather, here, to the extent that defendant Nix damaged the window in the manner asserted by the defendant, the defendant's damage added to, furthered, or otherwise compounded the damage that was previously done to the door. Notably, the defendant was part of the same criminal riot as defendant Nix and her actions attacking the door advanced the same cause as defendant Nix: participating in a violent riot in a restricted area in an effort to gain access to the Capitol building. Accordingly, because the defendant contributed or attempted to contribute to the damage to the exterior door as part of the violent, criminal riot, she is equally culpable in causing or attempting to cause the damage that resulted from the riot through her actions attacking the door.

The defendant attempts to distance herself from the actions of her fellow rioters, including defendant Nix, alleging that her actions were "subsequent to" those of defendant Nix, and asserting that she "did not cause the Government to incur an expense greater than it was already going to incur." Mot. at 3. This is incorrect. Simply because property is previously damaged does not give *carte blanche* to others to cause or attempt to cause additional damage without culpability, as the defendant appears to argue. The facts are clear:

- The defendant attacked the exterior door with a metal eye bolt tipped wooden pole.
- The defendant swung the pole into the door at least twice, forcefully hitting the door so

hard that she broke the pole.

- The defendant, accordingly, damaged or attempted to damage the door.

- After those actions on January 6, 2021, the windowpane suffered damage in excess of $1,000.

These facts are sufficient to convict the defendant on Count One. As such, the defendant's motion to dismiss should be denied.

## CONCLUSION

Therefore, for all these reasons, the United States respectfully submits that the defendant's Motion to Dismiss Count One of the Indictment should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  */s/ Ashley Akers*
ASHLEY AKERS
MO Bar #69601
Trial Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, DC 20530
Phone: (202) 353-0521
Email: Ashley.Akers@usdoj.gov

*/s/ Patrick Holvey*
PATRICK HOLVEY
DC Bar No. 1047142
Assistant United States Attorney
United States Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
Telephone: 202-252-7224
Email: Patrick.Holvey@usdoj.gov